## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Case No. 19-cv-12720 |
| In Re: AUTOMOTIVE BRAKE HOSES | |
| THIS RELATES TO: DIRECT PURCHASER ACTIONS | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Emerald Capital Advisors Corporation, in its capacity as Trustee for the FAH Liquidating Trust, individually and on behalf of a proposed class of direct purchasers of Automotive Brake Hoses ("Brake Hoses") brings this class action against Defendants Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., and TG Kentucky, LLC (collectively, "Defendants" or "Toyoda Gosei") under the federal antitrust laws for treble damages and alleges as follows.

### NATURE OF THE CASE

1.      Beginning at least as early as November 2005 and continuing until at least September 2009, Toyoda Gosei and its co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of Brake Hoses sold to in the United States and elsewhere at supra-competitive levels.  As a result of Defendants' unlawful conduct, Plaintiff and other Class members paid artificially-inflated prices for Brake Hoses and have suffered antitrust injury to their business or property.

2.      A criminal investigation of price fixing in the motor vehicle parts industry by the U.S. Department of Justice Antitrust Division has resulted in Hitachi Metals, Ltd., one of the leading Brake Hoses manufacturers in the world, being criminally charged and pleading guilty to antitrust violations with respect to the sale of Brake Hoses.  Under its guilty plea, Hitachi Metals, Ltd. agreed to pay a $1.25 million criminal fine and cooperate in the United States Department of Justice ("DOJ") investigation into antitrust violations by the manufacturers of automotive parts, including Brake Hoses.

3.      Plaintiff brings this action under Section 1 of the Sherman Act, 15 U.S.C. § 1 (the "Sherman Act") and Section 4 of the Clayton Act, 15 U.S.C. § 15 (the "Clayton Act"), and asserts the following allegations on information and belief, except as to those paragraphs that pertain to Plaintiff, which are based upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, the investigation made by its attorneys.

## DEFINITIONS

4.      "Automotive Brake Hoses" are flexible hoses that carries brake fluid through the hydraulic brake system of automobiles.

5.      The "Class Period" is November 1, 2005 through and including August 28, 2017.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action to recover treble damages, and costs of suit and reasonable attorneys' fees, resulting from Defendant's violations of the Sherman Act, 15 U.S.C. § 1.

7.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331, 1332(d) and 1337.

8.     Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391 (b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and Toyoda Gosei and its co-conspirators transact business in this District.

9.     The activities of Toyoda Gosei and its co-conspirators were within the flow of, were intended to, and did have a substantial effect on the interstate commerce of the United States.

10.     This Court has *in personam* jurisdiction over Toyoda Gosei because, *inter alia,* Toyoda Gosei: (a) transacted business throughout the United States, including in this District, (b) manufactured, sold, shipped, and delivered substantial quantities of Automotive Brake Hoses throughout the United States, including in this District, (c) had substantial contacts with the United States, including in this District, and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States, including in this District.

## THE PARTIES

11.     Plaintiff Emerald Capital Advisors Corporation, in its capacity as Trustee for the FAH Liquidating Trust ("Plaintiff"), is the successor in interest of Fisker Automotive, which purchased Automotive Brake Hoses directly from Toyoda Gosei or its co-conspirators during the Class Period.

12.     Defendant Toyoda Gosei Co., Ltd. ("Toyoda Gosei Co.") is a Japanese corporation with its principal place of business located in Aichi, Japan.  Defendant Toyoda Gosei

Co., directly or through its subsidiaries, which it wholly-owned or controlled, manufactured, marketed, or sold Automotive Brake Hoses that were purchased in the United States, including in this District, during the Class Period.

13. Defendant Toyoda Gosei North America Corp. is a Michigan corporation with its principal place of business located in Troy, Michigan. It is a subsidiary of and wholly owned and controlled by its Japanese parent, Toyoda Gosei Co. Toyoda Gosei North America Corp. sold Automotive Brake Hoses that were purchased in the United States, including in this District, during the Class Period. During the Class Period, its activities were under the control and direction of Toyoda Gosei Co.

14. TG Kentucky, LLC is a Kentucky limited liability company with its principal place of business in Lebanon, Kentucky. It is a subsidiary of, and wholly owned and controlled by, its Japanese parent, Toyoda Gosei Co. TG Kentucky, LLC sold Automotive Brake Hoses that were purchased throughout the United States, including in this District, during the Class Period. During the Class Period, its activities were under the control and direction of Toyoda Gosei Co.

## DEFENDANTS' CO-CONSPIRATORS AND AGENTS

15. The acts alleged to have been done by the Defendant were authorized, ordered and performed by its officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of Defendant's business affairs.

16. Other persons or firms not named as defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof. The Defendant is jointly and severally liable for the acts of its co-conspirators whether or not the conspirators are named as defendants in this Complaint.

17.     Defendant acted as a principal or an agent of or for the co-conspirators with respect to the acts, violations, and common course of conduct alleged in this complaint.

## INTERSTATE TRADE AND COMMERCE

18.     The activities of Defendant and its co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

19.     During the Class Period, Defendant manufactured, sold and shipped substantial quantities of Automotive Brake Hoses in a continuous and uninterrupted flow of interstate and foreign commerce.

## THE WORLDWIDE AND U.S. ANTITRUST INVESTIGATIONS INTO PRICE FIXING IN THE MOTOR VEHICLE PARTS INDUSTRY

20.     According to the DOJ, the motor vehicle parts investigation, of which Automotive Brake Hoses are a part, is the "largest criminal investigation the [DOJ] has ever pursued," both in terms of scope and potential volume of commerce affected by the alleged illegal conduct.

21.     With respect to the United States price-fixing investigation, in February 2010, the same month that Japanese and European authorities conducted raids, FBI investigators executed warrants and searched the offices of three Japanese motor vehicle part makers in metropolitan Detroit.

22.     Commenting on her division's investigation, Sharis A. Pozen, Acting Assistant Attorney General in charge of the DOJ's Antitrust Division, stated that "[a]s a result of this international price-fixing and bid-ridding conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." She further stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

23.     "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," said FBI's Special Agent in Charge Andrew G. Arena.  "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

24.     In July 2011, the Japan Fair Trade Commission ("JFTC") raided seven Japanese auto parts makers.  The JAPAN TIMES reported that the JFTC "suspects the parts manufacturers had meetings from 2002 or earlier to set parts prices and decided which companies would win contracts before bidding for orders from automakers."

25.     As of February 2015, 33 companies (and 52 executives) have pleaded guilty or agreed to plead guilty in the DOJ's ongoing investigation into price fixing and bid rigging in the motor vehicle parts industry and have agreed to pay a total of $2.4 billion in criminal fines.

## AUTOMOTIVE BRAKE HOSES

26.     Automotive Brake Hoses are flexible hoses that carry brake fluid through the hydraulic brake system of motor vehicles.  Automotive Brake Hoses are typically manufactured for specific motor vehicles and are developed more than a year in advance of the motor vehicle entering the market.  Before ordering Automotive Brake Hoses for a new motor vehicle model, vehicle manufacturers typically request pricing from suppliers through requests for quotations ("RFQs").  In response to the RFQs, the suppliers submit price quotes, or bids, to the vehicle manufacturer.  When a supplier receives part orders for a particular vehicle model, it typically supplies the parts for the duration of that model, which is usually four to six years.

27.     Automotive Brake Hoses manufactured, distributed or sold by Defendants during the Class Period are not functionally distinguishable from the Automotive Brake Hoses manufactured, distributed or sold by Defendants' co-conspirators in any material respect.

28.     Automotive Brake Hoses are installed by motor vehicle original equipment manufacturers ("OEMs") in new motor vehicles as part of the manufacturing process. Automotive Brake Hoses are also installed in motor vehicles to replace worn out, defective, or damaged Automotive Brake Hoses.

29.     OEMs include the Big Three in Detroit (General Motors, Ford and Chrysler) and non-domestic companies that also operated manufacturing plants in the U.S. during the Class Period, such as Fisker Automotive.  For example, during the Class Period, Nissan manufactured motor vehicles in Mississippi and Tennessee, Toyota in Kentucky, BMW in South Carolina, Honda in Ohio and Alabama, Hyundai and Mercedes-Benz in Alabama and Kia in Georgia.  In addition to OEMs, other direct purchasers, including certain distributors, purchased Automotive Brake Hoses from Defendant or its co-conspirators.

30.     When purchasing Automotive Brake Hoses, OEMs issue Requests for Quotation ("RFQs") to motor vehicle parts suppliers.  For automotive OEMs, the bidding process begins approximately three years prior to the start of production of a new model platform.  In response, motor vehicle parts suppliers submit quotations or bids and the OEM usually awards the business to the selected motor vehicle part supplier for the anticipated production cycle of the platform, usually four to six years.  Japanese OEMs procure parts for U.S.-manufactured motor vehicles both in Japan and the United States.

31.     Defendants and their co-conspirators supplied Automotive Brake Hoses to OEMs for installation in motor vehicles manufactured and sold in the United States and elsewhere.  The Defendants and their co-conspirators manufactured Automotive Brake Hoses (a) in the United States for installation in motor vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in motor vehicles manufactured

and sold in the United States, and (c) in Japan and elsewhere for installation in motor vehicles manufactured in Japan and elsewhere for export to and sale in the United States.

32.     During the Class Period, Defendants and their co-conspirators sold Automotive Brake Hose directly to OEMs, suppliers to OEMs, distributors, and other purchasers.

33.     During the Class Period, Defendant and their co-conspirators, who in a competitive market would be horizontal competitors, engaged in a conspiracy to rig bids for and to raise, fix, maintain, or stabilize prices of Automotive Brake Hoses.  As a result of their unlawful conduct, Defendants and their co-conspirators did not compete, but instead conducted their business insulated from competition.

### THE CHARACTERISTICS OF THE MARKET
### FOR AUTOMOTIVE BRAKE HOSES ARE CONDUCIVE TO COLLUSION

34.     In addition to Hitachi Metals, Ltd.'s guilty plea, several important economic characteristics of the market for Automotive Brake Hoses render it plausible that there was collusion among Automotive Brake Hoses suppliers, including the Toyoda Gosei Defendants.

*High Barriers to Entry*

35.     A collusive arrangement that raises product prices above competitive levels would, under normal circumstances, attract new entrants seeking to benefit from the supra-competitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Therefore, high barriers to entry help facilitate a cartel.

36.     There are high barriers to entry in the market for Automotive Brake Hoses.  Entry requires a company to incur significant start-up capital expenditures.  A new entrant into the business would have to incur millions of dollars in costs, including capital expenditures on plants and equipment, as well as transportation, electricity, infrastructure for distribution, and labor.  A

new entrant would also have to have assured relationships with significant customers in order to justify its substantial investments of capital.

*Price Inelasticity*

37.  When a seller of goods or services can increase prices without suffering a substantial reduction in sales, pricing is considered inelastic.  In order for a cartel to profit from raising prices above competitive levels, pricing must be relatively inelastic.  Otherwise, increased prices would result in declining sales, revenues, and profits.

38.  Automotive Brake Hoses are required for vehicles that use them; there are no viable substitute products.  Therefore, pricing for Automotive Brake Hoses is highly inelastic.

*Opportunities for Collusion*

39.  Defendants and their co-conspirators attended industry events that created opportunities to conspire.  Such industry events have provided myriad opportunities to meet, conspire, and share information.

**DEFENDANTS' ANTITRUST CONSPIRACY**

40.  During the Class Period, Defendants and their co-conspirators conspired to rig bids for, allocate the supply of, and to raise, fix and maintain prices for Automotive Brake Hoses sold in or into the United States.

41.  Defendants and their co-conspirators engaged in anticompetitive conduct in furtherance of the alleged conspiracy, as described below.

42.  Defendants and their co-conspirators participated in meetings, conversations, and communications in the United States and elsewhere to discuss bids and price quotations for Automotive Brake Hoses sold in or into the United States.

43.     Defendants and their co-conspirators agreed during those meetings, conversations, and communications to allocate the supply of Automotive Brake Hoses sold in or into the United States.

44.     Defendants and their co-conspirators sold Automotive Brake Hoses to customers in the United States and elsewhere at collusive and non-competitive prices.

45.     Defendants and their co-conspirators accepted payments for Automotive Brake Hoses sold in the United States and elsewhere at collusive and non-competitive prices.

46.     Defendants and their co-conspirators agreed during meetings, conversations, and communications to coordinate pricing to their customers.

47.     Defendants and their co-conspirators submitted pricing to motor vehicle manufacturers in the United States and elsewhere in accordance with their conspiratorial agreements.

48.     Defendant and their co-conspirators held meetings and conversations to monitor and police their bid-rigging and price-fixing conspiracy.

49.     Defendant and their co-conspirators affirmatively undertook measures to conceal their unlawful conduct.

50.     Defendants and their co-conspirators accomplished their conspiracy, in part, by rigging bids they made in response to RFQs.

51.     The RFQ process is designed to obtain independent bids from multiple suppliers. The OEM RFQ process generally works as follows: (1) the OEM issues the RFQ to multiple parts suppliers; (2) the suppliers submit bids; (3) depending on the OEM and product, the OEM and suppliers may revise the technical specifications and the pricing; (4) the suppliers submit revised bids; and (5) the OEM selects the winner.

52.     Generally, RFQ contracts are awarded to suppliers that submit the lowest bids and last for the life of a vehicle model (approximately five years).

53.     When OEMs purchase Automotive Brake Hoses directly from the supplier to whom they awarded the contract, the OEMs purchase the Automotive Brake Hoses at the winning price.

54.     That winning price is also used when OEM suppliers that were not part of the RFQ process purchase Automotive Brake Hoses directly from the winning bidder for incorporation into products manufactured for and sold to OEMs.  Those suppliers, who directly purchase Automotive Brake Hoses from the winning bidder, pay the winning bidder at least the winning price.   Others who purchased directly from Defendants and their co-conspirators also paid at least the OEM price. The OEM price sets the floor for pricing of Automotive Brake Hoses.

55.     Defendants' conduct persisted for several years and, had governmental authorities in the United States and abroad not launched an antitrust investigation into anticompetitive conduct in the market for motor vehicle parts, likely would have continued undetected.

56.     Defendants and their co-conspirators manipulated the RFQ process to accomplish their conspiracy.

57.     As part of their conspiracy, at times Defendants and their co-conspirators agreed to submit bids that would allow the supplier that had the existing Automotive Brake Hoses business for a particular model to win the Automotive Brake Hoses business for the successor model.

58.     Defendants and their co-conspirators coordinated their Automotive Brake Hoses pricing.  They submitted responses to RFQs that incorporated changes to pricing based on the

conspiratorial agreements they made with each other.  Defendants and their co-conspirators exchanged pricing information not just to ensure that the agreed-upon party would win the business, but also to ensure that the losing bidders would look competitive in order to have the opportunity to bid for future business.

59.     Defendants and their co-conspirators communicated, held meetings, and reached conspiratorial agreements in furtherance of their price-fixing conspiracy.  Defendants' and their co-conspirators' activities included, but were not limited to, the following:

a.     Agreeing to unlawfully coordinate pricing for, and allocate sales of, Automotive Brake Hoses.  For example, in responding to RFQs, Defendants and their co-conspirators agreed that the incumbent supplier would be the preferred bidder and to price their bids to effectuate this agreement.

b.     Colluding with regard to RFQs for Automotive Brake Hoses business by agreeing on pricing and then communicating agreed-upon prices to Defendants' and their co-conspirators' subsidiaries in the U.S., where the prices were submitted collusively.

c.     Discussing and exchanging pricing information with regard to Automotive Brake Hoses RFQs and reaching conspiratorial agreements with respect to RFQs by means of communications on multiple occasions to coordinate responses and exchanges and adjustments of Automotive Brake Hoses pricing before submission to OEMs in the United States and elsewhere.

60.     Defendants and their co-conspirators knew and intended that their actions regarding their sales of Automotive Brake Hoses to motor vehicle manufacturers would have a direct impact on prices for Automotive Brake Hoses sold to all direct purchasers in the United States.

61.     Defendants' and their co-conspirators' price-fixing conspiracy involving Automotive Brake Hoses impacted not only multiple bids submitted to OEMs, but also the prices paid by all other direct purchasers of Automotive Brake Hoses.

## UNITED STATES CRIMINAL CHARGES

62.     On October 31, 2014, the DOJ charged Hitachi Metals, Ltd. with participating in a combination and conspiracy to suppress and eliminate competition by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of Automotive Brake Hoses sold in the United States and elsewhere.

63.     According to the criminal information, Defendant Hitachi Metals, Ltd. and its co-conspirators:

a.     participated in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted in the United States and elsewhere;

b.     agreed, during those meetings, conversations, and communications, to allocate the supply of Automotive Brake Hoses sold in the United States and elsewhere;

c.     agreed, during those meetings, conversations, and communications, on bids and price quotations to be submitted in the United States and elsewhere;

d.     exchanged information on bids and price quotations to be submitted in the United States and elsewhere, in order to effectuate the agreements;

e.     submitted bids and price quotations in the United States and elsewhere in accordance with the agreements reached;

f.     sold Automotive Brake Hoses in the United States and elsewhere at collusive and noncompetitive prices; and,

g.    accepted payment for Automotive Brake Hoses sold in the United States and elsewhere at collusive and noncompetitive prices.

## CLASS ACTION ALLEGATIONS

64.    Plaintiff brings this action on behalf of itself, and, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), as the representative of a Class defined as follows:

> 65. All individuals and entities who purchased Automotive Brake Hoses in the United States directly from Defendants (or their subsidiaries or affiliates) from November 1, 2005 through August 28, 2017 ("Settlement Class Period"). Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities.

66.    Members of the Class are so numerous and geographically dispersed across the United States that joinder is impracticable.  While the exact number of Class members is unknown to Plaintiff, it is believed to be in the hundreds.  The identity of the members of the Class can be readily determined from information and records Defendants and their co-conspirators possess.

67.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class were damaged by the same wrongful conduct by Defendants and their co-conspirators, *i.e.*, they have paid artificially inflated prices for Automotive Brake Hoses as a result of the anticompetitive and unlawful conduct of Defendants and their co-conspirators.

68.    Plaintiff will fairly and adequately protect and represent the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class.

69.    Plaintiff is represented by counsel experienced and competent in the prosecution of antitrust class action litigation.

70.     Questions of law and fact common to members of the Class predominate over questions that may affect only individual Class members, because Defendants and their co-conspirators have acted on grounds generally applicable to the entire Class.  Such generally applicable conduct is inherent in Defendants' and their co-conspirators' anticompetitive and unlawful conduct.

71.     There are core questions of law and fact common to the Class, such as:

a.     Whether Defendants and their co-conspirators conspired to fix, raise, maintain, or stabilize prices of, to allocate, or to rig bids for, Automotive Brake Hoses;

b.     Who participated in the conspiracy and how long it lasted;

c.     Whether the conspiracy caused Automotive Brake Hoses prices to be higher than they otherwise would have been;

d.     Whether Defendants' and their co-conspirators' conduct caused injury to the business or property of Plaintiff and members of the Class;

e.     Whether Defendants' and their co-conspirators' conduct violates Section 1 of the Sherman Act;

f.     Whether Defendants and their co-conspirators undertook actions to conceal their unlawful conspiracy; and,

g.     How to measure the damages suffered by the Class.

72.     A class action is superior to the other methods available for the fair and efficient adjudication of this litigation because individual joinder of all Class members is impracticable. Individual litigation presents the potential for inconsistent judgments and would greatly increase the cost and duration of litigation for all parties and for the judicial system.  A class action

permits more efficient case management and offers the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.

## ANTITRUST INJURY SUFFERED BY PLAINTIFF AND THE CLASS

73.     The anticompetitive conduct of Defendants and their co-conspirators has had the following effects:

       a.     price competition has been restrained, suppressed, or eliminated with respect to Automotive Brake Hoses;

       b.     the prices of Automotive Brake Hoses have been raised, fixed, maintained, or stabilized at supra-competitive levels; and,

       c.     purchasers of Automotive Brake Hoses have been deprived of free and open competition in the Automotive Brake Hoses market.

74.     As a result of Defendants' and their co-conspirators' contract, combination, or conspiracy, Plaintiff and Class members paid higher prices for Automotive Brake Hoses than they would have in the absence of the conspiracy, and Plaintiff and Class members have sustained injury to their business or property.

## PLAINTIFF'S CLAIMS ARE TIMELY

75.     Plaintiff and the other Class members had no knowledge of the anticompetitive conduct alleged herein, or of facts sufficient to place them on notice of the claims set forth herein, until October 31, 2014, at the earliest.

76.     No information about the Automotive Brake Hoses conspiracy was in the public domain or otherwise available to Plaintiff or the Class prior to October 31, 2014, when the DOJ filed its criminal information against Hitachi Metals, Ltd.  Prior to that time, there was insufficient information to suggest that Defendants and their co-conspirators were involved in an

Automotive Brake Hoses conspiracy. For these reasons, the statute of limitations as to Plaintiff's and the Class's claims did not begin to run until (at the earliest) October 31, 2014.

77. Within the statute of limitations period, Plaintiff and the Toyoda Gosei Defendants entered into tolling agreements extending the time in which Plaintiff could bring suit against the Toyoda Gosei Defendants based on the claims alleged herein. Thus, Plaintiff's claims, as alleged herein, are timely.

## COUNT I: CLAIM FOR VIOLATION OF SECTION 1 OF THE SHERMAN ACT

78. Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

79. Defendants and their co-conspirators entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

80. The acts done by Defendants and their co-conspirators as part of, and in furtherance of, the contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' and their co-conspirators' affairs.

81. Commencing at least as early as November 2005 and continuing for several years thereafter, the exact dates being currently unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, or maintain prices for Automotive Brake Hoses, creating anticompetitive effects.

82. The anticompetitive acts of Defendants and their co-conspirators were intentionally directed at the United States market and had a substantial and foreseeable effect on

interstate commerce by raising and fixing prices for Automotive Brake Hoses throughout the United States.

83.     As a result of the conspiracy alleged herein, the prices charged to Plaintiff and the other members of the Class for Automotive Brake Hoses were unlawfully raised, fixed, maintained, or stabilized in the United States.

84.     The conspiracy has had the following effects:

     a.     prices paid by Plaintiff and the Class for Automotive Brake Hoses were raised to, or fixed, maintained, or stabilized at, non-competitive levels;

     b.     Plaintiff and the Class have been deprived of the benefits of free, open, and unrestricted competition in the market for Automotive Brake Hoses; and

     c.     competition in the market for Automotive Brake Hoses has been unlawfully restrained, suppressed, or eliminated.

85.     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, Plaintiff and the Class have been damaged, and will continue to be damaged, by paying supra-competitive prices that they would not have had to pay in the absence of the unlawful conduct of Defendants and their co-conspirators as alleged herein.

86.     The conspiracy is a *per se* violation of the federal antitrust laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class herein, and respectfully requests the following relief:

A.     That the Court determine that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, with Plaintiff as the designated Class representative and its counsel as Class Counsel;

B.      That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this complaint, be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. §1;

C.      That Plaintiff and the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint-and-several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D.      That Defendants, their subsidiaries, affiliates, successors, transferees, assignees, and the respective officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.      That Plaintiff and the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law;

F.      That Plaintiff and the Class be awarded pre-judgment and post-judgment interest in accordance with law; and

G.      That Plaintiff and the Class receive such other or further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: September 17, 2019

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK BRESSACK

38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com
nfink@finkbressack.com

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON &
 MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
wlondon@fklmlaw.com
mmoskovitz@fklmlaw.com

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU &
 PACHIOS LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1800 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Eugene A. Spector
William G. Caldes
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF,
  P.C.
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300
espector@srkattorneys.com
bcaldes@srkattorneys.com
jspector@srkattorneys.com

Robert J. Bonsignore
BONSIGNORE, LLC
3771 Meadowcrest Drive
Las Vegas, NV  89121
Telephone: (781) 856-7650
rbonsignore@class-actions.us

R. Alexander Saveri
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone: (415) 217-6810
rick@saveri.com

Solomon B. Cera
Thomas C. Bright
CERA LLP
595 Market Street, Suite 2300
San Francisco, CA  94105
Telephone: (415) 777-2230
scera@cerallp.com
tbright@cerallp.com